**23-2267**

# United States Court of Appeals for the Federal Circuit

FRAUNHOFER-GESELLSCHAFT ZUR FORDERUNG DER ANGEWANDTEN FORSCHUNG E.V.,

*Plaintiff-Appellant,*

– v. –

SIRIUS XM RADIO INC.,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the District of Delaware in No. 1:17-cv-00184-JFB-SRF Honorable Joseph F. Bataillon, Senior Judge*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

BEN J. YORKS
DAVID C. MCPHIE
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660
(949) 760-0991
byorks@irell.com
dmcphie@irell.com

*Counsel for Plaintiff-Appellant*

FEBRUARY 22, 2024

COUNSEL PRESS (800) 4-APPEAL • (713087)

# CERTIFICATE OF INTEREST

Counsel for Appellant Fraunhofer-Gesellschaft zur Forderung der angewandten Forschung e.V. certifies the following:

1. The full name of every party or amicus represented by me is:

   Fraunhofer-Gesellschaft zur Forderung der angewandten Forschung e.V.

2. The name of the real party in interest represented by me is:

   Fraunhofer-Gesellschaft zur Forderung der angewandten Forschung e.V.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

   None.

4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   IRELL & MANELLA LLP
   Morgan Chu
   Kamran Vakili
   Nima Hefazi
   Heather Benzmiller Sultanian
   Alexis Federico
   Josh Woods

   FARNAN LLP
   Brian E. Farnan
   Michael J. Farnan

   SHULMAN HODGES & BASTIAN LLP
   LOBEL WEILAND GOLDEN FRIEDMAN LLP
   Alan J. Friedman

5. Other than the originating case, any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

None.

6. Organizational Victims and Bankruptcy Cases:

Not applicable.

Respectfully submitted,

Dated: February 22, 2024

*/s/ Ben J. Yorks*

Ben J. Yorks
David C. McPhie
IRELL AND MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Telephone: 949-760-0991

*Attorneys for Appellant*
*Fraunhofer-Gesellschaft zur Forderung der angewandten Forschung e.V.*

# TABLE OF CONTENTS

**Page**

REPLY ARGUMENT .......... 1

I. THE DISTRICT COURT'S ORDER SHOULD BE REVERSED ON MULTIPLE GROUNDS INCLUDING SXM'S FAILURE OF PROOF AND NUMEROUS MATERIAL FACTUAL DISPUTES .......... 3

A. SXM Failed To Present Undisputed Evidence Of Misleading Conduct .......... 3

*1. There Are Material Factual Disputes About The Parties' Alleged "Business Relationship" Between 2010 And 2015* .......... 3

*2. Alternative Non-Misleading Inferences Can Be Drawn From Fraunhofer's Alleged "Silence" After The Changed Circumstances In 2010* .......... 6

*3. SXM's Other Arguments Fail To Establish Any Misleading Conduct As A Matter Of Law* .......... 12

B. SXM Failed To Present Evidence Of Reliance .......... 14

*1. There Is No Evidence That SXM Relied On Any Allegedly Misleading Conduct* .......... 14

*2. SXM Miscomprehends The Legal Requirements To Prove Reliance* .......... 16

*3. SXM's Other Arguments Fail To Establish Reliance As A Matter Of Law* .......... 18

C. SXM Failed To Present Evidence Of Prejudice .......... 20

D. SXM Failed To Prove Entitlement To An Implied License As A Matter Of Law .......... 22

**Page**

II. SUMMARY JUDGMENT SHOULD BE GRANTED FOR FRAUNHOFER BECAUSE SXM CANNOT PREVAIL ON ITS EQUITABLE ESTOPPEL DEFENSES AS A MATTER OF LAW ........ 25

III. REMAND IS NEEDED TO CONSIDER FRAUNHOFER'S TWO ALTERNATIVE LIABILITY THEORIES PRESENTED ON SUMMARY JUDGMENT ........ 28

A. The Order Erred In Denying As "Moot" Fraunhofer's MSJ Seeking A Finding That The MLA And Sublicense Terminated In 2015 ........ 28

B. The Order Erred In Denying As "Moot" Fraunhofer's MSJ Seeking A Finding That The Sublicense Terminated Upon The XM Merger in 2011 ........ 30

IV. THE DISTRICT COURT'S DECISION ON FRAUNHOFER'S COMMON INTEREST CLAIM WAS LEGAL ERROR ........ 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
960 F.2d 1020 (Fed. Cir. 1992) ....................6, 10, 18

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.*,
52 F.3d 1062 (Fed. Cir. 1995) ....................8, 17

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................28

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
605 F.3d 1305 (Fed. Cir. 2010) ....................17

*Atlas Corp. v. United States*,
895 F.2d 745 (Fed. Cir. 1990) ....................22, 23, 24

*Crown Packaging Technology, Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373 (Fed. Cir. 2011)....................27

*Endo Pharms. Inc. v. Actavis, Inc.*,
746 F.3d 1371 (Fed. Cir. 2014) ....................23, 24

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) ....................21

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*,
60 F.3d 770 (Fed. Cir. 1995) ....................26

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) ....................12

*Hall v. Aqua Queen Mfg., Inc.*,
93 F.3d 1548 (Fed. Cir. 1996) ....................26

*High Point SARL v. Sprint Nextel Corp.*,
817 F.3d 1325 (Fed. Cir. 2016) ....................*passim*

*Interactive Gift Exp., Inc. v. Compuserve*,
256 F.3d 1323 (Fed. Cir. 2001) ....................12

*Lionbridge Techs., LLC v. Valley Forge Ins. Co.*,
53 F.4th 711 (1st Cir. 2022)....................................................................................32

*Meyers v. Asics Corp.*,
974 F.2d 1304 (Fed. Cir. 1992) ..............................................................5, 19, 26

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
845 F. App'x 943 (Fed. Cir. 2021) .........................................................................32

*Oracle Am., Inc. v. Google Inc.*,
2012 WL 1965778 (N.D. Cal. May 31, 2012).........................................................13

*Pei-Herng Hor v. Ching-Wu Chu*,
699 F.3d 1331 (Fed. Cir. 2012) ..............................................................................23

*Radio Sys. Corp. v. Lalor*,
709 F.3d 1124 (Fed. Cir. 2013) .........................................................................15, 30

*Ricoh Co. v. Nashua Corp.*,
185 F.3d 884 (Fed. Cir. 1999) ..........................................................................26, 30

*Saab Cars USA, Inc. v. United States*,
434 F.3d 1359 (Fed. Cir. 2006) .................................................................11, 18, 21

*SCA Hygiene Prods. v. First Quality Baby Prods.*,
767 F.3d 1339 (Fed. Cir. 2014) ..............................................................7, 9, 14, 31

*Semcon Tech, LLC v. Micron Tech., Inc.*,
660 F. App'x 908 (Fed. Cir. 2016) ....................................................................27, 28

*Sprint Comms. Co. v. Time Warner Cable, Inc.*,
2017 WL 978107 (D. Kan. Mar. 14, 2017) ...........................................................7, 26

*Stauffer v. Brooks Bros. Group, Inc.*,
758 F.3d 1314 (Fed. Cir. 2014) ..............................................................................21

*Stickle v. Heublein, Inc.*,
716 F.2d 1550 (Fed. Cir. 1983) ..........................................................................7, 24

*Trivedi v. Slawecki*,
642 F. App'x 163 (3d Cir. 2016) ............................................................................26

*Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*,
103 F.3d 1571 (Fed. Cir. 1997) .........................................................................23, 24

## REPLY ARGUMENT

This Court should reverse the District Court's summary judgment dismissal of Fraunhofer's infringement case. SXM's response brief ("Resp.Br.") is laden with legal errors and factual mischaracterizations, and SXM ultimately fails to present any argument or evidence sufficient to justify the Order.

For example, SXM consistently mischaracterizes the standard of review as "abuse of discretion," *e.g.*, Resp.Br.2 (Counterstatement of Issues), all but ignoring that a summary judgment determination of no genuine issue of material fact is subject to de novo review. *Cf.* Resp.Br.21.

SXM likewise errs in arguing the Order was based on a pure equitable estoppel defense and ***not*** any sort of "implied license" theory. Resp.Br.20. SXM's motion for summary judgment ("MSJ")—which the Order granted-in-part—unambiguously described its proffered defense as an "***implied license***" that was "based on" equitable estoppel grounds:

> **D. SXM Has an Implied License**
>
> Even if SXM does not have an express license or sublicense, SXM still has an implied license to the Asserted Patents based on two independent grounds.
>
> **1. FhG Is Equitably Estopped from Suing SXM**
>
> "The effect of equitable estoppel is a license to use the invention that extends throughout the life of the patent." *High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1331 (Fed. Cir.

Appx1468; *see also* Appx1444-46 (MSJ "Based On [SXM's] License Defense"). SXM now pretends otherwise, wrongly claiming "SXM … moved for summary judgment on equitable estoppel" (Resp.Br.17) and even accusing Fraunhofer of not raising arguments in opposition to an MSJ ***that SXM never filed***.

In all of this, SXM gets things exactly backwards. To prevail on summary judgment, it was ***SXM*** that had the dual obligation to (1) present evidence sufficient to satisfy its burden for the affirmative defense on which it moved, and (2) prove the absence of material factual disputes. Because SXM did neither, the Order cannot stand. The substantial additional argument and evidence presented by Fraunhofer only confirms SXM's failure of proof. At most, SXM's arguments reveal factual disputes that preclude summary judgment for SXM.

Because SXM cannot satisfy its burden—either for an implied license defense based on equitable estoppel ***or*** a stand-alone equitable estoppel defense—this Court should further enter summary judgment in Fraunhofer's favor on these defenses.

Regardless of the outcome on these issues, remand is necessary at a minimum to address Fraunhofer's two remaining theories of liability that were raised but not substantively considered on summary judgment. The District Court's legally erroneous decision regarding the common interest privilege should also be reversed.

# I. THE DISTRICT COURT'S ORDER SHOULD BE REVERSED ON MULTIPLE GROUNDS INCLUDING SXM'S FAILURE OF PROOF AND NUMEROUS MATERIAL FACTUAL DISPUTES

To justify summary judgment of implied license based on equitable estoppel, SXM must present undisputed facts establishing the three equitable estoppel elements ***and*** prove it is entitled to an implied license as a matter of law. Failure on any of these four issues requires reversal, and SXM falls short on all of them.

## A. SXM Failed To Present Undisputed Evidence Of Misleading Conduct

### *1. There Are Material Factual Disputes About The Parties' Alleged "Business Relationship" Between 2010 And 2015*

On the first element, the crux of SXM's argument is that Fraunhofer's alleged silence was "misleading" in the context of the parties' "business relationship," and that the nature of this relationship is supposedly "***undisputed***" as a factual matter. Resp.Br.23-24.[1] SXM asserts that the parties "continued" their business relationship "as usual" after 2010 with "extensive ongoing engagements" over the next five years involving aspects of the "allegedly-infringing system" relating to "audio technology." *Id.*, Resp.Br.29. However, these factual assertions are clearly ***disputed*** in numerous material respects as they are unsupported and inconsistent with the record. For example:

---

[1] All emphasis to quoted material in this brief has been added.

- SXM fails to identify ***any*** evidentiary support for its assertion that the parties had "extensive" contacts between 2010 and 2015.
- SXM does not identify a single example of high-band engineering or design work performed by Fraunhofer between 2010 and 2015. *Cf.* Appx4380 at 252:12-25 ("no new work").
- The few payments that SXM identifies all pertain to work performed in 2010 or earlier. Appx6016-17; Appx6033-35; Appx6042-49; Appx1796-97.
- SXM's witnesses admitted that "things changed" in "2010 or earlier" when the high-band work "wrapped up"; "the same level of engagement with the Fraunhofer team" was "no longer really need[ed]." Appx4379-80 at 249:8-250:2, 251:6-25, 252:12-18; Appx4329 at 47:1-9.
- Even the sparse post-2010 contacts were not focused on "broadcast systems-type work" (i.e., satellite radio) but rather involved "potential ***other*** engagements" with a "distinct organization" that operated "independently" of the high-band system staff and "focused ***solely***" on different technologies. Appx1827-28 at 89:6-90:17; Appx4380 at 253:1-11; Appx4375-76 at 233:19-234:20; Appx4383 at 263:18-264:12.

Within the 2010-2015 timeframe, SXM identifies only one email exchange regarding a possible new project called "Safetrip" (unrelated to the high-band

system) and one email vaguely mentioning other potential "new" projects. Appx6023-6034; Appx6051. There is no evidence that anything came of these. *See Meyers v. Asics Corp.*, 974 F.2d 1304, 1309 (Fed. Cir. 1992) (mere "invitation to enter into a business relationship" was not "misleading" and does not "convey[] the impression [of] acquiesce[nce] in [the] alleged infringement"). And SXM's erroneous claim that Fraunhofer "admit[ted]" doing high-band work in this period (Resp.Br.29) is not supported by SXM's citations, which merely summarize hedging language from ***SXM witnesses*** who could not remember exact timing when testifying a decade later. *E.g.*, Appx4380 at 252:12-25 ("2010 ***or earlier***"); Appx1827 at 89:9-24; Appx1841 at 37:16-21.

SXM tries to cure its evidentiary failure by identifying new evidence on appeal, yet this also fails to provide the requisite "undisputed" support for this element. The cited SXM testimony vaguely mentions periodic meetings early in the parties' relationship but is "not clear on the years" of when things "taper[ed] off." Appx4155 at 88:1-4, 89:6-24. Nor do SXM's cited public filings reveal any "audio" work by Fraunhofer between 2010 and 2015. Appx5068, Appx5277, Appx5384. And SXM's assertion regarding a "new component for the high-band system" in "2014" (Resp.Br.29) is unfounded; the cited document merely reflects a license payment made for "Addendum 2 to Amendment 8" of the FFPC, which was executed ***in 2009***. Appx2350; Appx2503 (listing addenda dates).

### 2. *Alternative Non-Misleading Inferences Can Be Drawn From Fraunhofer's Alleged "Silence" After The Changed Circumstances In 2010*

There are also serious disputes about what ***inferences*** can be properly drawn from the (disputed) factual record. SXM does not present any evidence that misleading conduct was the "***only*** possible inference." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1044 (Fed. Cir. 1992). Nor does SXM persuasively rebut any of the six exemplary alternative inferences identified by Fraunhofer. Br.28-29.

For example, it would be reasonable to infer that issues regarding the Sublicense were not raised because the parties' interactions became infrequent and sporadic after the high-band project completed in 2010. Br.28. As another example, it would be plausible to infer that licensing issues did not come up in the few interactions between 2010 and 2015 because those interactions involved people who did not have relevant knowledge or responsibility (e.g., non-lawyers and personnel in a distinct group not involved in prior high-band work). *Id.*

SXM does not cite any contrary evidence, apparently taking the position that the existence of ***any*** relationship or interaction between parties is sufficient to prove that silence is "misleading." Resp.Br.36-37; Resp.Br.28. This approach is utterly without foundation in law or logic. Even SXM concedes that a proper analysis requires considering the "entirety" of the factual record. Resp.Br.26. That would

include a full set of contextual facts regarding the parties' relationship and interactions (including timing, frequency, subject matter, participants, etc.).

The importance of considering such crucial context is confirmed in numerous cases where no equitable estoppel was found despite some relationship or interaction between the parties. Br.31-33 (citing *Stickle*, *SCA*, *Braun*, *Sprint*). SXM's efforts to distinguish these cases only help Fraunhofer. For example, SXM concedes there can be no "close relationship" giving rise to equitable estoppel where communications are "meager" or where parties "had a close business relationship before infringement started, [and] no meaningful business relationship afterwards." Resp.Br.31. All of that is true here.

SXM also mischaracterizes the relevant authority. For example, the finding of no equitable estoppel in *Braun* did not turn on post-infringement interaction (which the decision never mentions), but rather on the communications being directed primarily to a ***different***, non-accused product. Br.27. As for *Sprint*, which SXM describes as a case where the parties' relationship was immediately "severed" once infringement began (Resp.Br.31-32 n.6), the defendant actually "***transitioned*** away … on a ***gradual*** basis" while the patentee ***continued*** to provide services. *Sprint Commc'ns Co. v. Time Warner Cable, Inc.*, 2017 WL 978107, at *4 (D. Kan. Mar. 14, 2017). Similar to *Braun* and *Sprint*, any limited interactions with Fraunhofer after 2010 on different subjects could not reasonably be understood as misleading.

These decisions involving contacts that were insubstantial, speculative, and disassociated from the infringing products (similar to this case) are readily distinguishable from cases where equitable estoppel was found. For example, in *High Point*, there was undisputed evidence the patentees misled the defendants by "help[ing]" them "build a communications network through licensed ***and unlicensed activity*** for over a decade." *High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1326 (Fed. Cir. 2016). Here, there is no similar (much less undisputed) evidence that Fraunhofer helped "build" any aspect of the high-band system during any period of "unlicensed activity" between 2010 and 2015.

*ABB* is likewise distinguishable, including because the defendant's parent company was the plaintiff's "***largest single robotics customer***." *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1064 (Fed. Cir. 1995). That fact supported an inference that the patentee might be willing to let infringement slide to preserve the continuity of this ***substantial*** ongoing business. SXM presents no similar evidence here; to the contrary, Fraunhofer's purported income from over a decade of pre-2010 high-band work is less than one percent of what SXM claims was Fraunhofer's annual revenue. Appx3306; Resp.Br.4.

Contrary to SXM's argument (Resp.Br.32), *Hemstreet* is applicable here as SXM had ample reason to inquire into its failed license beginning in 2010, and never justified its failure to do so. Br.32. The evidence of notice to SXM is substantial.

*E.g.*, Appx2781, Appx2784 (June 2010 Sale Order disclosing "impaired" status of MLA and WorldSpace's "default" in connection with Sublicense); Appx2154; Appx2620-22 (public hearing approving conditional agreement to terminate MLA); Appx3723-25 (SXM received Sale Order and hearing notice); Appx6247-60; Appx4366 at 194:20-22, 196:1-6 (admitting that "rights to the Fraunhofer patents under the sublicense would necessarily be limited by any restrictions in the [MLA]" and that SXM "needed to … gain those rights"). Given this record, SXM should have known the 2009 XM Settlement with WorldSpace was inadequate to secure the rights needed for ongoing use of Fraunhofer's patented technology—especially as SXM was not even a party to the XM Settlement. Appx1711-13. Under such circumstances, SXM cannot claim to have been "misled." *SCA Hygiene Prods. v. First Quality Baby Prods.*, 767 F.3d 1339, 1351 (Fed. Cir. 2014) (reversing summary judgment of equitable estoppel given defendant's failure to perform "even the most rudimentary due diligence").

SXM also fails to overcome the four other alternative inferences identified by Fraunhofer (Br.29):

- SXM claims it is not "relevant" whether Fraunhofer possessed the facts necessary to assess possible claims against SXM in 2010. Resp.Br.35. Yet this Court has confirmed it ***is*** relevant whether the patentee "has known of the allegedly infringing activities" and was "***acting on the basis of***

***accurate facts***." *High Point*, 817 F.3d 1325, 1330 (Fed. Cir. 2016); *SCA*, 767 F.3d at 1343. Here, SXM presents no evidence (much less undisputed evidence) that Fraunhofer possessed "accurate facts" regarding XM's improper attempt to assign the Sublicense to SXM without authorization. SXM argues the XM-SXM merger was public (Resp.Br.36) but identifies no pre-suit disclosure of XM's failure to effect a proper assignment.

- SXM argues Fraunhofer had an "undisputed practice to *raise* 'payment issues'" (Resp.Br.36), but ignores the parties' established practice of taking ***years*** to raise such issues, which made it reasonable to infer that claims might be delayed but not abandoned. Br.29; Appx4310.
- SXM makes no attempt to demonstrate ignorance of Fraunhofer's research emphasis and foreign non-profit status. Resp.Br.34-35. Its claim of "no evidence" fails because SXM's own evidence confirms these were well-known facts (Br.29), and SXM bears the burden of proof in any event.
- SXM argues damages in 2010 were not "de minimis" (Resp.Br.34), but *Aukerman* did not impose any such requirement. *Aukerman*, 960 F.2d at 1044 (any "possible inference" is sufficient). SXM does not otherwise contest the alternative inference based on SXM's increased profit, which it concedes more than doubled between 2010 and 2015. Resp.Br.34.

Unable to rebut these alternative inferences on their merits, SXM attempts a last-ditch "waiver" argument, claiming these issues are all newly presented on appeal. Resp.Br.33. Not true. For example, Fraunhofer's briefing below noted "work on SXM's infringing system had 'wrapped up' by 2010 (or earlier)" and there was no longer a "close working relationship." Appx6529. Fraunhofer similarly emphasized "most [2010-2015] interactions … involved different technologies with different employees at a different division of Fraunhofer." *Id.* Fraunhofer observed prior disputes with SXM had taken years to resolve. Appx6528 ("work that was unpaid for over three years"). And Fraunhofer's MSJ No. 1 made clear Fraunhofer was not previously aware of XM's failure to properly transfer the Sublicense. Appx1483; Appx6492-94.

SXM had the burden of rebutting alternative inferences that were apparent on the face of the summary judgment record; Fraunhofer had no burden to present contrary evidence (although it did). *Saab Cars USA, Inc. v. United States,* 434 F.3d 1359, 1368 (Fed. Cir. 2006) (when MSJ movant "fails to satisfy [its] burden," "non-movant is 'not required to come forward' with opposing evidence"). And of course, it is entirely proper to address on appeal ***all*** issues and support cited in the Order—

including evidence and arguments that SXM did not raise in its original MSJ.[2] *Cf. Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008) (declining to consider on appeal completely new issue that "in no way … derives from the decision proffered below"); *see also Interactive Gift Express, Inc. v. Compuserve*, 256 F.3d 1323, 1347 (Fed. Cir. 2001) (parties on appeal may "proffer[] additional or new supporting arguments" where "based on evidence of record").

#### 3. *SXM's Other Arguments Fail To Establish Any Misleading Conduct As A Matter Of Law*

SXM's remaining arguments regarding "misleading" conduct are unavailing. First, SXM points to other facts including (1) the 1998 Sublicense with WorldSpace; (2) Fraunhofer's incorporation of its patented technology into the high-band system launched in 2001; and (3) the 2009 XM Settlement with WorldSpace. Resp.Br.23-24. Yet all of these occurred before 2010, and SXM concedes that it "never argued" that "Fraunhofer's [alleged] silence before 2010 was misleading." Resp.Br.26.

Second, SXM makes the spurious argument that Fraunhofer's "silence" was misleading because Fraunhofer "knew" SXM was using the Asserted Patents before 2015. *E.g.*, Resp.Br.18-19. This is a red herring. Of course Fraunhofer's patents were

[2] SXM's only cited evidence in support of its implied license MSJ was the FFPC and a related addendum (Exs. 5, 14), brief testimony from three SXM witnesses (Exs. 22-24), and a lengthy data chart (Ex. 25). Appx1468-70. The Order cites many more exhibits than this. *E.g.*, Appx2 ("Exs. 4, 6-13," "Exs. 16-19," "Exs. 129-38"), Appx4 ("Ex. 129-31, 133-38," "Exhibit 132"), Appx6 ("Karkos Dep.," "Ex. 119"), Appx8 ("Exs. 129-31, 135-37," "Ex. 119").

being ***used*** in the high-band system since its 2001 launch. The relevant question here is whether those patents were being used ***under license***. SXM presents no evidence that Fraunhofer determined in 2010 that the Sublicense had terminated and yet remained silent in an attempt to mislead SXM. The evidence in fact suggests the contrary. Br.12 (citing Appx953-58; Appx3707).

Third, SXM argues Fraunhofer was not just silent but affirmatively "encouraged" SXM's infringement. Resp.Br.28-29. The only cited "evidence" for this claim not already addressed above is a sentence from a Fraunhofer annual report calling the high-band system a "success," and a speaker invitation to an SXM employee. It defies reason that SXM understood these statements as "encouragement" to infringe. *Oracle Am., Inc. v. Google Inc.*, 2012 WL 1965778, at *1 (N.D. Cal. May 31, 2012) ("[i]t would be most bizarre to somehow find an implied license" based on a few public "positive statements" regarding the infringing product).

Fourth, SXM argues that Fraunhofer's collection efforts for its pre-2010 work demonstrate Fraunhofer's "active pursuit of money" such that any failure to simultaneously raise an infringement claim could only be understood as misleading. Resp.Br.27. This nonsensical claim is pure attorney argument, and SXM presents no evidence suggesting Fraunhofer's routine efforts to collect for past work would be understood as anything more.

Finally, SXM argues it need not prove a "duty to speak" to the extent "known acquiescence" can be shown instead. Resp.Br.30 (citing *SCA*). But it was SXM that chose to argue a "duty to speak" below. Appx6484. SXM made no attempt to present an "acquiescence" theory, i.e., where a patentee raises a claim but then goes silent after the accused infringer pushes back. *See SCA*, 767 F.3d at 1349 (noting "typical" equitable estoppel fact pattern). There is no evidence to support such a theory here.

### B. SXM Failed To Present Evidence Of Reliance

#### *1. There Is No Evidence That SXM Relied On Any Allegedly Misleading Conduct*

SXM's failure to satisfy the second "reliance" element provides an independent basis for reversal. The deficiency here is glaring and straightforward: ***SXM did not present any evidence of reliance at all.*** Br.33-34.

SXM does not cure this failure of proof on appeal. SXM cites only some deposition excerpts relating to SXM's decision to transition to the high-band system, including the "business aspects" that drove the decision: "it's easier to move [the] 35 percent" of customers using the low-band system "than [the] 65 percent" of customers using the high-band system. Appx4362 at 179:10-19; Appx4358-59 at 162:9-163:2; Appx1841-42 at 37:11-21, 40:3-6; Appx4148 at 58:15-24, 60:17-22; Resp.Br.38.

None of this testimony even hints at any reliance by SXM on Fraunhofer's conduct or that SXM considered licensing issues at all in its decision to transition to

the high-band system. There is no mention of Fraunhofer's alleged "silence" and no suggestion that SXM would have acted differently if Fraunhofer had raised an infringement claim earlier.

To the contrary, the cited evidence confirms the impossibility of SXM's reliance argument, as it demonstrates SXM's transition decision actually ***predated*** any allegedly misleading conduct. Fraunhofer's supposedly improper silence is alleged to have started when the Sublicense terminated—at the earliest, in ***September 2010***. Appx3117. Yet SXM's cited testimony reveals the high-band transition process began in "***early 2010***." Appx4359 at 169:1-9.[3] ***A decision made in early 2010 (or before) could not have "relied" on events that did not occur until later in 2010.*** *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130-31 (Fed. Cir. 2013) (no reliance where defendant's decision to expand infringement occurred ***before*** patentee could assert relevant patent; reversing summary judgment).

The record also clearly indicates what factors SXM ***did*** rely upon in deciding to transition to the high-band. Multiple SXM witnesses testified the sole motivation for that decision was the reduced burden ("lower lift") of shifting the 35 percent of low-band manufacturers rather than the 65 percent of high-band manufacturers.

[3] SXM similarly describes the "thorough analysis" that led to its migration decision (Resp.Br.12-13), and notes this "analysis" took place "following the merger of Sirius and XM," which was in "July 2008." Resp.Br.5-6, Resp.Br.8.

Appx2360 at 37:15-24 ("the ***only criteria*** we needed to look at"); Appx1843 at 150:22-151:5 ("the ***whole decision*** came down to" which group "is it going to be easier to move"); Appx4397 at 319:24-320:2 ("[I]t was easier to move 35 percent over than moving 65 percent. ***That was the basis*** for the decision."); Appx4358-59 at 162:9-163:2; Br.36-37 (citing other examples). SXM's witnesses also pointed to their purported (albeit mistaken) beliefs regarding the Sublicense and XM Settlement. Br.37-38. SXM does not even attempt to rebut any of this testimony. Although Fraunhofer was under no obligation to disprove reliance, this evidence conclusively establishes that SXM cannot satisfy this element.

SXM now suggests that, despite overwhelming evidence of other factors driving SXM's decision, the reliance element might still be satisfied if these factors were somehow "reinforced" by Fraunhofer's allegedly misleading silence or if SXM only ***partly*** relied on that alleged silence. Resp.Br.45. This Court has never endorsed such a legal formulation, but in any case, SXM cites no evidence of "reinforcement" or "partial" reliance on Fraunhofer's alleged silence, either.

#### *2. SXM Miscomprehends The Legal Requirements To Prove Reliance*

Faced with this evidentiary hole, SXM tries to gut the reliance requirement altogether by rewriting the relevant legal standard. SXM contends that, to prove reliance under this Court's precedent, it need only show that "alternatives were 'considered.'" Resp.Br.40. But this is not what "reliance" means; a party can

obviously ***consider*** alternatives to infringement regardless of whether it chooses to ***rely*** on the patentee's conduct in deciding between those alternatives.

SXM's theory also finds no support in the caselaw. SXM cites *High Point* as supposedly supporting its proposed "consideration" test (Resp.Br.40), but SXM badly mischaracterizes this case. It ignores the detailed evidence of reliance amassed by the defendant, which included "***unrebutted*** deposition testimony" from ***multiple witnesses*** who testified "Sprint had several options when building its network and … ***would have acted differently if the threat of litigation was a possibility.***" *High Point*, 817 F.3d at 1331. This evidence came directly from knowledgeable corroborating sources ("in-house patent counsel as well as … outside counsel") and was timely disclosed and tested during discovery (witnesses were "deposed and testified based on their unique roles in rendering advice as legal counsel"). *Id.* at 1331-32. It was on the strength of this ***undisputed*** evidence that the Court in *High Point* granted defendant's MSJ—not mere "consideration" of alternatives.

SXM's other cases are likewise distinguishable as they involved substantial evidence of actual reliance. For example, in *Aspex*, the defendant's president testified the infringing products would have been withdrawn if suit had been filed earlier. *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1312 (Fed. Cir. 2010). This was corroborated by evidence the defendant had done exactly that in an earlier dispute with the same patentee. *Id.* Similarly, in *ABB*, evidence confirmed the

steps defendant had previously taken to avoid infringement of the asserted patent, including an "internal memorandum" showing the defendant had "stopped production of a different [product]" that it "determined might infringe" that patent. *ABB*, 52 F.3d at 1064-65. No analogous evidence exists here.

SXM suggests that it would be "contrary to the principles of equity" to require substantive proof of reliance for "those with no clue that they even might be infringing." Resp.Br.45. But of course, knowledge is not a prerequisite to infringement, and this Court has made clear that if an infringer is "unaware … of the patentee and/or its patent," then the equitable estoppel defense is not available. *Aukerman*, 960 F.2d at 1042. In any event, the suggestion that SXM had "no clue" about infringement is unfounded (*see* Section I.A.2 above).

#### 3. *SXM's Other Arguments Fail To Establish Reliance As A Matter Of Law*

SXM's other reliance arguments fail to remedy its lack of evidence. First, SXM faults Fraunhofer for supposedly not presenting evidence that "SXM would have still chosen the high-band system" if Fraunhofer had raised its infringement claim sooner. Resp.Br. 43-44. But of course, SXM has the burden here, and Fraunhofer had no obligation to disprove reliance. *Saab,* 434 F.3d at 1368.

Second, SXM presents an alternative theory that it relied on Fraunhofer's alleged silence in "continuing" to pursue its high-band transition efforts after that process was already underway. Resp.Br.47-48. SXM cites no evidence to support

this claim, and there is none. In any event, SXM never mentioned this theory in its MSJ, but rather claimed to have relied on Fraunhofer's conduct when SXM originally "***decided*** to migrate to the allegedly infringing system." Appx1469.

Third, SXM wrongly claims that Fraunhofer is demanding an "erroneously high burden of proof" by requiring that SXM "prove precisely what alternative paths it would have taken" with direct (not circumstantial) evidence. Resp.Br.40-41. SXM's problem is not that its proof of reliance is vague or circumstantial, but rather that it has no evidence at all.

Fourth, SXM tries to distinguish decisions where the patentee initially raised an infringement claim and then went silent. Resp.Br.41. But if anything, that factual distinction means this case presents an even ***weaker*** argument for equitable estoppel. *See Meyers*, 974 F.2d at 1309 (rejecting claim that "silence lulled [defendants] into the belief that [patentee] did not intend to enforce his patents" where there was no prior "threatened immediate and vigorous enforcement of his patents"; reversing summary judgment).

Fifth, SXM offers some mistaken and irrelevant arguments about exhaustion and non-infringement. Resp.Br. 42-43. These issues are not properly raised as they were nowhere addressed in the Order or the relevant briefing below. They have nothing to do with this appeal.

Finally, SXM's remaining arguments present (at most) factual disputes that preclude summary judgment. For example, on whether it was viable or practical for SXM to transition to the low-band system before 2015, SXM only provides unexplained deposition citations (Appx4359; Appx4362) that neither suggest nor prove it could have "significantly reduced its infringement exposure" by choosing the low-band. Resp.Br.42; *cf.* Br.39-41. Similarly, on whether SXM's dismissive reaction to Fraunhofer's infringement claims in 2015 evidences how it would have reacted in 2010, SXM's assertions about supposed "momentum" find no support in its evidence cited below but rather are pure attorney argument, newly raised on appeal. Resp.Br.47-48 (citing Appx6807-08, which SXM raised for the first time after Fraunhofer filed its opening brief). Even if SXM's lack of evidence could be excused, these factual issues preclude summary judgment for SXM.

### C. SXM Failed To Present Evidence Of Prejudice

SXM likewise fails to satisfy the "prejudice" element, as it does not meet its burden of presenting undisputed evidence that SXM was harmed as a ***cause*** of allegedly misleading conduct by Fraunhofer. Indeed, SXM makes no attempt to rebut the Order's shortcomings that Fraunhofer identified on this element. Br.42-43.

Instead, SXM falls back on a claim that prejudice was "undisputed." Resp.Br.48. This unfounded claim again miscomprehends the nature of SXM's summary judgment burden. SXM's MSJ contained no meaningful discussion or

analysis of prejudice; it provided only a single string citation to a few unexplained documents (deposition excerpts and a spreadsheet). Appx1470. Fraunhofer rightly pointed out that SXM's "conclusory assertions" were inadequate and that SXM failed to prove prejudice. Appx5708-10. This burden was SXM's to prove; Fraunhofer had no obligation to present its own contrary evidence to disprove prejudice. *Saab,* 434 F.3d at 1368. Notably, the evidence of prejudice cited in SXM's MSJ is ***completely different*** from the evidence cited in the Order. *Compare* Appx8 *with* Appx1470. Fraunhofer could not and did not "waive" its ability on appeal to respond to evidence that SXM never cited below.[4]

SXM's responsive brief now provides another unexplained string citation to yet additional (previously uncited) evidence. Resp.Br.49-50. Many of these refer to material SXM belatedly added to the appendix over Fraunhofer's objection after the opening brief was filed (Appx6548 and later). In any event, these citations still do not demonstrate costs incurred or other harm supposedly ***caused*** by Fraunhofer. To the contrary, SXM's evidence undercuts its claim that expenditures were dependent

[4] SXM's cited cases present completely dissimilar facts. *Stauffer v. Brooks Bros. Group, Inc.*, 758 F.3d 1314, 1322 (Fed. Cir. 2014) (rejecting attempt to raise new constitutional issues on appeal); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1295-96 (Fed. Cir. 2009) (rejecting argument directed to particular claim element not timely preserved in Rule 50(a) motion).

on a choice between high-band and low-band, as it shows that SXM's most recent satellites can be used for either. Appx4359 at 167:8-21.

SXM complains that Fraunhofer is demanding "precise cost amounts" and proof of "capital investments" not required by this Court's precedent. Resp.Br.50. This is not Fraunhofer's argument. The Order itself purported to rely on SXM's capital investments. Appx8. SXM's problem is not about lack of detail or type of economic prejudice, but rather that SXM has not presented ***any*** evidence showing harm caused by Fraunhofer. To the extent the Court credits any of SXM's deficient and untimely arguments on appeal, SXM at most has presented factual disputes requiring further consideration on remand.

### D. SXM Failed To Prove Entitlement To An Implied License As A Matter Of Law

SXM also fails to meet its burden on the additional requirements for an implied license. As Fraunhofer demonstrated (Br.6, Br. 24, Br.45), this case presents the classic fact pattern where an implied license is improper: an "express contract" (the FFPC) on the "same subject" that excludes the very rights sought via implied license. *Atlas Corp. v. United States*, 895 F.2d 745, 754 (Fed. Cir. 1990); Appx1707 (Exhibit D to FFPC); Appx4257 at 75:18-76:25 ("the [FFPC] had a carve-out of certain patents"); Appx4154-55 at 85:8-86:9 (FFPC licensed some patents but included "caveat" for others); Appx4383-84 at 265:18-267:14 ("XM understood" it

"would need to go to WorldSpace for a sublicense" to the "four [asserted] patents" as identified in Exhibit D of FFPC); Appx4365-66 at 193:9-195:2.

SXM makes the dubious claim that this appeal has nothing to do with the implied license defense—a claim that (as shown above, pp. 1-2) contradicts the express language of SXM's MSJ that the Order granted-in-part. SXM's conflation of these two defenses is also inconsistent with precedent: "the two doctrines are ***not*** conterminous" and it is incorrect to "remove all distinction between [them]." *Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997). To the extent the Order is read as granting a stand-alone equitable estoppel defense (rather than the implied license defense raised in SXM's MSJ), that incongruity would only supply an additional basis for remand. *See Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331 (Fed. Cir. 2012) (vacating equitable estoppel defense where not properly raised in MSJ).

Moreover, the well-established principle described in *Atlas* is not as nearly as limited as SXM suggests. Resp.Br.53-54. For example, *Endo Pharmaceuticals Inc. v. Actavis, Inc.*, 746 F.3d 1371 (Fed. Cir. 2014) rejected an implied license claim in circumstances similar to those presented here, finding it "dispositive" that an earlier contract (like the FFPC) included an "explicit disclaimer of any other licenses not within the literal terms of the contract." *Id.* at 1378; *see also Wang*, 103 F.3d at 1580-81. And *High Point* does not undercut the teachings of *Atlas* and *Endo*, as *High Point*

involved only a stand-alone equitable estoppel defense (not an implied license) and thus had no occasion to consider any possible impact of the parties' past licenses. Br.46.

SXM similarly errs in contending that *Wang* abrogated or "call[ed] into question" the holding of *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1559 (Fed. Cir. 1983) that "an implied license cannot arise out of the unilateral expectations or even reasonable hopes of one party." Resp.Br.56. *Wang* expressly relied on *Stickle* and is fully consistent with it, teaching an implied license analysis should evaluate whether a party can "properly infer that the [patentee] consents to his use of the patent" based on the patentee's language and conduct. 103 F.3d at 1580-81. SXM never explains how a party could unilaterally infer consent to use patents when it previously entered into a contract expressly ***disclaiming*** such consent.

Finally, SXM appeals to "equity," suggesting this Court should ignore the specific FFPC provisions in favor of some different, vaguely defined contractual "purpose." Resp.Br.55. But there is nothing "equitable" about allowing SXM to exploit Fraunhofer's patented technologies in derogation of the FFPC and Fraunhofer's exclusive rights. SXM's cited testimony only confirms the parties understood the FFPC was "negotiated and signed" to include specific "provisions" that would "regulate" and govern "the use of the results and intellectual properties." Appx6211-13 at 31:19-23, 56:24-57:16, 58:10-17. Moreover, even if SXM's

recourse to extrinsic evidence were credited, it would raise (at most) more factual disputes to be resolved on remand.

## II. SUMMARY JUDGMENT SHOULD BE GRANTED FOR FRAUNHOFER BECAUSE SXM CANNOT PREVAIL ON ITS EQUITABLE ESTOPPEL DEFENSES AS A MATTER OF LAW

Unlike SXM, Fraunhofer requested summary judgment on SXM's implied license defense based on equitable estoppel (Appx1539-43) ***and*** the stand-alone equitable estoppel defense (Appx1544-45)**.** Fraunhofer's MSJ on these two issues should be granted as both defenses suffer from intractable defects. Br.52-54.

For example, Fraunhofer demonstrated SXM cannot meet its burden on the "reliance" element, which SXM depends upon for both defenses. *See* Section I.B above. Although SXM proffered the Wadin declaration in response to Fraunhofer's MSJ (Appx6231-33), the Order correctly found the declaration untimely (Appx6 n.3) and SXM does not dispute this finding on appeal. SXM half-heartedly suggests that the finding was limited to SXM's MSJ (Resp.Br.58), yet the Order says nothing of the sort and does not otherwise differentiate the evidence cited in the parties' cross-motions. Moreover, the record confirms SXM failed to disclose the declaration's factual allegations during discovery, and SXM presents no contrary evidence. *See* Appx2937-83 (contention interrogatory response); Appx5772-73 (pointing out absence of facts showing reliance).

In any event, the declaration fails to raise a factual dispute, offering only the bare statement that, if Fraunhofer had "threatened to sue" in "2010 or early 2011," SXM would have "taken that threat into account in its decision-making process." Appx6232. There are no corroborating facts or other evidentiary support for this statement (unlike cases such as *High Point*, *Aspex*, *ABB*). This Court has repeatedly rejected similar post hoc, conclusory assertions of reliance. *See, e.g.*, *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995) (finding inadequate testimony that defendant "relied on [the patentee's] supposed silence from 1981 to 1988"); *Meyers*, 974 F.2d at 1309; *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1558 (Fed. Cir. 1996). SXM cannot survive summary judgment with such legally inadequate "evidence." *Ricoh Co. v. Nashua Corp.*, 185 F.3d 884 (Fed. Cir. 1999); *Sprint*, 2017 WL 978107 at *6; *Trivedi v. Slawecki*, 642 F. App'x 163, 168 (3d Cir. 2016) ("conclusory, self-serving affidavit[]" is "insufficient to withstand" MSJ).

Summary judgment can also be granted for Fraunhofer on any of the other grounds analyzed in Section I above. For example, SXM's claim to an implied license fails as a matter of law in view of the uncontroverted evidence that the FFPC disclaimed any license to the Asserted Patents (Section I.D). Similarly, summary judgment for Fraunhofer is warranted where SXM cannot prove any misleading conduct or prejudice caused by such conduct (Sections I.A & I.C). Contrary to

SXM's claim, Fraunhofer raised SXM's failure of proof on ***all*** of these issues in its MSJ briefing. Appx1539-43, Appx6527-30.

On the "misleading" element, SXM further cites Mr. Eberlein's 2012 email, but this does not create any material factual dispute. Fraunhofer explained in detail the problems with this email in terms of foundation and relevance. Appx6529 & n.11; Appx4022-23 at 251:22-25 (Mr. Eberlein was "not responsible for XM projects" or "discussing any contractual details with them"), 252:23-254:11 ("I'm not a lawyer" and "did not know this contract agreement" or whether XM had any "valid" rights under Sublicense). In response, the District Court stated that it "accepted Fraunhofer's disavowal" of the document. Appx4 n.2. SXM does not object to the District Court's decision on this point. And even if the evidentiary objections were overlooked, the email would only confirm that SXM was on notice of problems with the MLA, yet chose to do nothing.

Finally, SXM presents no authority holding it would be "inappropriate" to grant Fraunhofer's MSJ on appeal (Resp.Br.56), and this Court's precedent shows the opposite. *See, e.g.*, *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1380 (Fed. Cir. 2011) (reversing summary judgment of invalidity and granting appellant's cross-motion on that issue). The non-precedential *Semcon Tech* is not to the contrary; the Court there acknowledged its authority to enter summary judgment for the appellant but demurred where this

would involve consideration of issues not squarely addressed below. *Semcon Tech, LLC v. Micron Tech., Inc.*, 660 F. App'x 908, 915 (Fed. Cir. 2016). This case presents no such impediment, as the Order freely considered the evidence and argument presented in ***both*** parties' cross-motions.

## III. REMAND IS NEEDED TO CONSIDER FRAUNHOFER'S TWO ALTERNATIVE LIABILITY THEORIES PRESENTED ON SUMMARY JUDGMENT

Regardless of the Court's decision on the parties' cross-motions regarding SXM's alleged defenses under a 2010 termination theory, remand is necessary at a minimum to consider Fraunhofer's other two theories of liability. It was legal error to deny perfunctorily Fraunhofer's MSJs on these two independent theories as "moot," as there was at least "sufficient evidence" to support judgment for Fraunhofer under either theory. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### A. The Order Erred In Denying As "Moot" Fraunhofer's MSJ Seeking A Finding That The MLA And Sublicense Terminated In 2015

Fraunhofer specifically moved for summary judgment on its alternative theory of liability where the MLA and Sublicense terminated in 2015 rather than 2010. Appx1510-19. SXM presents no justification for the Order's unexplained finding that this motion was "moot." Nor does SXM make any meaningful claim that its MSJ of implied license actually covered the 2015 termination scenario.

In fact, it is clear on the face of SXM's MSJ that its implied license theory did not cover the 2015 termination theory. That MSJ contained multiple sections addressing different license arguments, and each section carefully specified the Fraunhofer theory (or theories) to which it applied:

- Sections A.1 and A.2 were expressly directed to the 2010 termination theory. Appx1458.
- Section A.3 was expressly directed to the 2015 termination theory. Appx1463.
- SXM expressly stated that its argument in Section B applied ***whether the Sublicense "terminated in 2010 <u>or</u> 2015."*** Appx1465.
- By contrast, Section D regarding implied license was identified as applying ***only to the 2010 theory***: "Assuming *arguendo* that the MLA terminated in 2010 …." Appx1468-69.

In other words, SXM knew how to communicate when a summary judgment argument applied to multiple liability theories, and it chose to raise an implied license argument for the 2010 theory alone.

SXM also makes no attempt to explain how the elements of equitable estoppel could possibly be satisfied in a scenario where SXM enjoyed a license until 2015. It is well-established (and plain common sense) that if a patentee has no patent claim to assert, a failure to raise that claim cannot mislead. *See, e.g.*, *Radio Sys.*, 709 F.3d

at 1131; *Ricoh*, 185 F.3d 884. The fanciful notion that Fraunhofer could have somehow misled SXM by ***not*** terminating the Sublicense before 2015 (Resp.Br.62) is not supported by any authority cited by SXM (and Fraunhofer is aware of none).

Despite its failure to argue below that an implied license could be found under a 2015 termination theory, SXM now brazenly contends it is ***Fraunhofer*** who has "forfeited" the ability to respond on this issue. Resp.Br.59-61. Once again, SXM gets things backwards. To the extent SXM believed it was entitled to summary judgment of implied license based on the 2015 theory, SXM had the obligation to timely present the issue and meet its associated burden. It did not do so.

Furthermore, Fraunhofer could not have "forfeited" a liability theory that it affirmatively raised in its own MSJ. Appx1510-13. Not only did Fraunhofer make clear it was pursuing its 2015 termination theory, but it also claimed entitlement to summary judgment on that theory. Notably, none of SXM's cited waiver cases involved an appellant who presented its own affirmative motion on the very issue that was supposedly waived. *Cf.* Resp.Br.59-60. Given these facts, Fraunhofer's additional observation that SXM's implied license defense did not apply to the 2015 theory (Appx6528 n.10) merely provided further confirmation of what was already apparent from the record.

### B. The Order Erred In Denying As "Moot" Fraunhofer's MSJ Seeking A Finding That The Sublicense Terminated Upon The XM Merger in 2011

Fraunhofer likewise filed a separate MSJ on its third theory of liability: that the Sublicense ceased to exist when XM's attempted assignment to SXM failed as contrary to federal law and the Sublicense itself. Appx1475-92. The Order's finding of mootness on this motion was error for reasons similar to those for the 2015 theory. SXM never articulated how it could establish an implied license in the 2011 merger termination scenario, and SXM disclosed no such alternative theory during discovery. *Cf.* Appx2937-83. Moreover, as discussed above (Section I.A.2), SXM could not present such a theory even if it tried, as equitable estoppel demands the patentee have knowledge of "accurate facts," *SCA*, 767 F.3d at 1343, which is not the case here. Indeed, Fraunhofer showed that XM's failure to properly transfer the Sublicense to SXM was ***never*** disclosed or confirmed to Fraunhofer until discovery in this litigation, Br.58, and SXM presents no contrary evidence.

## IV. THE DISTRICT COURT'S DECISION ON FRAUNHOFER'S COMMON INTEREST CLAIM WAS LEGAL ERROR

Finally, SXM argues the parties' dispute over discovery of licensing documents in the 2010-2015 timeframe cannot be addressed on appeal as it is purportedly "unrelated to" the "equitable estoppel" issue. Resp.Br.66. Not true. Interlocutory rulings "merge" with a final judgment and both "are reviewable on appeal." *Olaplex, Inc. v. L'Oreal USA, Inc.*, 845 F. App'x 943, 948 (Fed. Cir. 2021);

*Lionbridge Techs., LLC v. Valley Forge Ins. Co.*, 53 F.4th 711, 724 & n.16 (1st Cir. 2022) (reviewing common interest issue).

SXM's claim that this is merely a dispute about the District Court's factual findings is also incorrect. Fraunhofer does not contest the operative facts: that a January 2013 "Private Sponsor Confidential Information Memorandum" was shared with Fraunhofer (including a "blank form which mirrors the terms of the Master Agreement") and that the Master Agreement itself was executed by "July 30, 2014." Appx17-18. What Fraunhofer contests is the ***legal*** determination that "no common interest privilege applies to the communications that predated the Master Agreement." Appx27. Based on this erroneous legal principle, the District Court used the execution date as a strict cutoff and apparently disregarded other facts (including its own finding that the "terms of the Master Agreement" were the subject of earlier communications with IPXI). Appx17. SXM does not offer any legal defense of this improper, bright-line approach, which is contrary to this Court's precedent in *Regents*. Br.60-61. The decision should therefore be reversed.

Respectfully submitted,

Dated: February 22, 2024

*/s/ Ben J. Yorks*
Ben J. Yorks
David C. McPhie
IRELL AND MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Telephone: (949) 760-0991

*Attorneys for Appellant*
*Fraunhofer-Gesellschaft zur Forderung*
*der angewandten Forschung e.V.*

## CERTIFICATE OF SERVICE

I certify that on February 22, 2024, Fraunhofer's Reply Brief was filed electronically using the CM/ECF system and served via the CM/ECF system on the following counsel for Defendant-Appellee:

Gary P. Naftalis
Mark Baghdassarian
Alan R. Friedman
Jason M. Moff
Shannon H. Hedvat
Tobias B. Jacoby
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Dated: February 22, 2024

*/s/ Ben J. Yorks*

Ben J. Yorks
David C. McPhie
IRELL AND MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Telephone: (949) 760-0991

*Attorneys for Appellant*
*Fraunhofer-Gesellschaft zur Forderung*
*der angewandten Forschung e.V.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) or Fed. R. App. P. 28.1(e). The brief contains 6,999 words, excluding the parts of the brief exempted by Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) or Fed. R. App. P. 28.1(e) and the type style requirements of Fed. R. App. P. 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Word 2010 in size 14 Times New Roman font.

Dated: February 22, 2024

*/s/ Ben J. Yorks*

Ben J. Yorks
David C. McPhie
IRELL AND MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Telephone: (949) 760-0991

*Attorneys for Appellant*
*Fraunhofer-Gesellschaft zur Forderung*
*der angewandten Forschung e.V.*